246

**NATIONAL LABOR RELATIONS BOARD v. BRADFORD MACHINE TOOL CO. (INTERNATIONAL ASS'N OF MACHINISTS, DIST. NO. 34, Intervenor).**

No. 9438.

Circuit Court of Appeals, Sixth Circuit.

Oct. 22, 1943.

Guy Farmer, of Washington, D. C. (Robert B. Watts, Ernest A. Gross, Howard Lichtenstein, Joseph B. Robison, and Winthrop A. Johns, all of Washington, D. C., on the brief), for petitioner.

Herbert Shaffer, of Cincinnati, Ohio (Waite, Schindel & Bayless, Philip J. Schneider, and Edward Holz, Jr., all of Cincinnati, Ohio, on the brief), for respondent.

Ralph Becker, of Cincinnati, Ohio (Thorndyke & Becker and Robert J. Harris, all of Cincinnati, Ohio, on the brief), for intervener.

Before HICKS, MARTIN, and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

The National Labor Relations Board, on complaint filed by the United Automobile, Aircraft and Agricultural Implement Workers of America, C. I. O., herein called the United, found that respondent corporation had illegally participated in the selection of the bargaining agent of its employees and ordered it to cease recognition of such agent, to desist from interference with its employees in their right of self-organization, and to post the customary notices, in such case provided.

On the Board's petition to enforce its order, respondent corporation and intervening International Association of Machinists, A. F. L., herein called the International—the bargaining agent in question —insist that respondent was not guilty of any unfair labor practice; that it did not participate in the selection of such agent; and deny that the order of the Board should be enforced.

The claimed illegal conduct and unfair labor practice arise out of the following circumstances: On October 10, 1941, representatives of the International Association of Machinists called upon officials of respondent, and presented to them "petitions," signed by 122 of respondent's 222 employees, and reciting the following:

"We, the undersigned employees of the Bradford Machine Tool Company, hereby authorize the American Federation of Labor to represent us and, in our behalf, to negotiate and conclude all agreements as to hours of labor, wages and other employment conditions in accordance with the provisions of the National Labor Relations Act.

"The full power and authority for the undersigned as described herein supersedes any power or authority heretofore given to any person or organization to represent us, and shall remain in full force and effect for one year from date and thereafter, subject to thirty (30) days' written notice of my desire to withdraw such power and authority to act for me in the matters referred to herein.

"This Authorization shall be null, void and of no effect, unless the American Federation of Labor secures for us a ten cent per hour increase in wages, and other considerations within ten days from this date."

It is conceded that the signatures of the employees were genuine and that no coercion or influence had been used by respondent in helping to secure them. The petitions had been circulated by nonsupervisory employees and the evidence fails to disclose that respondent assisted in any

way, knowingly permitted, or contemplated their circulation in the plant during working hours, or had any prior knowledge that they were to be circulated.

Upon checking the signatures on the petition with employees' signatures on canceled pay checks, respondent's officials stated that they were satisfied with such comparison; that respondent recognized the International as the collective bargaining agent of its employees; and on request, notices to that effect were posted upon the bulletin boards. The International then presented a contract, insisting that it be signed the next day. Counsel for respondent, after studying the proposed contract, submitted a counter proposal.

After the representatives of the International had left the plant on October 10th, the representatives of the United called the respondent and demanded that it cease bargaining with the International, inasmuch as the United represented a majority of respondent's employees. The evidence on the hearing, however, disclosed that at the time this claim was made, the United had authorizations and designations as collective bargaining agent, from only 104 of 222 employees of respondent.

On October 11, 1941, representatives of the International, accompanied by a committee of respondent's employees, met with representatives of respondent, and the counter proposal, above referred to, was considered. After discussion, a contract was finally signed, containing a wage increase of ten cents per hour and a closed-shop provision; and notices containing the important provisions of the contract were posted on the bulletin board. Following such posting, the United threatened to call a strike if the closed-shop provision were carried out; filed charges; and, thereafter, the respondent and the International were persuaded by the regional director of the Labor Board to waive the closed-shop provision until the validity of the contract could be determined by the Board.

The Board, in its conclusion, stated that when International exhibited to respondent the conditional designation of itself as bargaining agent, "it offered respondent a choice, the exercise of which the Act reserves exclusively to employees,—that of establishing or declining to establish a bargaining representative. On their face the designations conditioned the authority of the I. A. M. to bargain collectively upon action to be taken by the respondent. They

may thus be said to have remained executory at the time of their presentation." The Board further found that the respondent granted the wage increase, knowing that thereby it fulfilled the condition upon which the effectiveness of the designation was limited. Employers, it was held, are under the duty to refrain from any action which is calculated to aid or hinder a labor organization in its efforts to achieve representative status. The Board found that by granting the increase, with full knowledge of the condition set forth in the employees' designation of bargaining agent, the respondent illegally participated in the selection of the bargaining representative of its employees. "To hold otherwise would be to encourage labor organizations seeking to achieve representative status to address themselves to employers rather than to the employees, a result abhorrent to the policies and purposes of the Act." The Board further concluded that, by the execution of the closed-shop contract, in which was affirmed respondent's recognition of International as exclusive bargaining agent, respondent illegally assisted and entrenched the International during the pendency of a representative dispute between two unions, "as to the relative strength of whose claims of majority it had no rational basis for choice."

At this point may be reviewed the salient circumstances leading up to respondent's recognition of the International as bargaining agent. The International first attempted to organize respondent's employees in March, 1941. Later, in June of the same year, the United commenced its organizational efforts; and during June, both unions addressed a letter to respondent, in which each claimed that it represented the majority of the employees and requested recognition as exclusive collective bargaining agent. It appears that at this time, the International had 147 cards signed by the employees as members of its union, and the United, 40 signed authorizations from other employees. Thereupon, respondent filed a petition with the Board for investigation and certification of representatives; and on July 15, 1941, respondent and the two unions entered into an agreement, providing that an election be held for the purpose of determining the agent for collective bargaining, and that the employees would be given the opportunity to vote for either of the unions, or neither.

In the election, which was held July 25, 1941, out of 239 employees eligible to vote, 201 cast ballots, with the result that there were 39 unchallenged votes for United, 51 for International, and 104 unchallenged votes for neither; 7 votes were challenged, spoiled, or blank. Subsequent to the election, International filed a written protest with the Board, asking that the election be set aside on the ground that during and prior to the election, respondent had committed numerous acts of interference.

Testimony on the protest was taken October 1st and 2nd, 1941, and International requested, and received, adjournment of hearing until October 10th. Conferences were thereafter held between International and respondent on October 3rd, at which International demanded that respondent recognize it as bargaining agent, basing its claim upon 147 membership cards which had been signed in June and July, prior to the election. Respondent refused to recognize International, stating that the election demonstrated that it did not represent a majority of the employees. After further discussion, during which International threatened to withdraw certain skilled mechanics from the plant if respondent persisted in its attitude, respondent agreed that it would recognize and deal with it if it would dismiss the pending protest against the election and if, thereafter, it would secure new authorizations from a majority of the employees. On October 9th, International consented to the dismissal of its protest regarding the election; and on the same day, the protest was dismissed by the Board's regional director.

There is no finding that there was any unfair labor practice, until after the employees had designated the International as their bargaining agent; and the only claim of illegal conduct thereafter made is that, by recognizing such designated agent and executing a contract—including wage raise and closed shop—respondent participated in the selection of the bargaining agent and entrenched such agent during a dispute over representation.

We have here, then, a history of labor dispute and industrial unrest over a period of several months, embracing campaigns between competing unions for selection as bargaining agent; designations thereof by employees, which were collected over a period of time and, thereafter, in effect, repudiated in a contested election by many of the employees; failure to agree on a bargaining agent; an appeal from the election; inability to secure wage demands; and general discontent—all of which was finally concluded by the execution of a contract between an industrial concern and a labor union representing, for that purpose and at the time of execution thereof, a majority of the employees. There is no proof or finding of any collusion between the concern and the union in question, or of any discriminatory practice indulged in by respondent against the contesting union.

Authorization of the International, by the employees, as collective bargaining agent is to be construed as an unqualified authorization for a 10-day period, to become void at the conclusion thereof, unless the bargaining agent was able to secure for the employees "a ten-cent per hour increase in wages and other considerations," upon the successful conclusion of which, the authorization and designation were to remain in full force for the period of one year. When the International appeared before the officials of respondent, furnishing the evidence of majority representation, it was proper for respondent to recognize International at that time as bargaining agent; and, if the demands presented appeared fair, it would have been unjustifiable for it to refuse consideration of them.

The condition of the contract, with regard to the wage increase, was the same as that proclaimed necessary by both unions in their organizing campaigns, as well as that demanded by a great number of the employees for a long period prior to the execution of the contract, the denial of which was causing the widespread dissatisfaction and turmoil.

Having experienced frustration over repeated demands for wage increase, the employees were willing to choose the International as their bargaining agent for a year, provided that, after a stated period, the wage increase could be secured by that union. The employees, apparently, did not wish to commit themselves for a long period to an agent that might not secure the desired results. At the same time, the employees further sought to safeguard their representation in collective bargaining by providing, in the authorization, for their right to withdraw, on thirty days' written notice, any power and authority of the bargaining agent to represent them. Upon

agreement as to the terms of the contract, it would have been improper for respondent to refuse to enter into a written agreement.

If respondent were justified in relying upon the designation of the International as bargaining agent by the majority of the employees at the time the contract was executed, it was valid. It is conceded that the designation and authorization was signed by a majority of the employees and that, if otherwise valid, International represented such majority at the time of the signing of the contract. Under such circumstances, respondent was not required to ask for another election or to cast doubt upon the authorization on the ground that it did not represent the will of the majority of its employees.

From the foregoing, it is our conclusion that respondent was not guilty of any illegal conduct or unfair labor practice. Enforcement of the Board's order, therefore, is denied.